# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BONNIE LEE MEANS,
        Plaintiff,

v.

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,
        Defendant.

2:15-cv-01107-TFM

## MEMORANDUM OPINION AND ORDER

June 20, 2016.

## I. Introduction

Now pending before the court are CROSS-MOTIONS FOR SUMMARY JUDGMENT filed by Bonnie L. Means ("Plaintiff") and Carolyn W. Colvin, the Acting Commissioner of Social Security ("Defendant"). (ECF Nos. 9, 12). The parties have filed briefs in support of their respective motions (ECF Nos. 10, 13) and both parties have filed a reply brief in opposition to opposing counsel's motion. (ECF Nos. 14, 15). Accordingly, the motions are ripe for disposition.

## II. Background

Plaintiff was born on May 18, 1965.[1] (R. 36). She has a tenth grade education level. (R. 40). Plaintiff has past work experience as a drycleaner/presser and as a housekeeper at the Hampton Inn. (R. 45, 51). She suffers from osteoarthritis, degenerative disc disease of the lumbar spine, migraine headaches, major depressive disorder, generalized anxiety disorder, and

---

[1] Plaintiff is classified as a "younger person." 20 C.F.R. § 404.1563(c). As of her alleged disability onset date, Plaintiff was 44 years old, fitting into the age category of 18-44. She subsequently changed age category to 45-49. Although individuals who fall into this age category are still "younger persons," they are "more limited in their ability to adjust to other work than persons who have not attained age 45." *Id.*

1

panic disorder, each of which the Administrative Law Judge ("ALJ") found to be "severe" impairments. (R. 13). Plaintiff's "non-severe" impairments, as found by the ALJ, include thyroid cancer, benign pleomorphic adenoma and gastrointestinal problems, including reflux and hiatal hernia. *Id*. These conditions are either no longer symptomatic or do not prevent Plaintiff from working. *Id*.

### A. Procedural History

On August 13, 2012, Plaintiff protectively filed a Title II application for disability insurance benefits alleging an onset of disability on May 15, 2010. (R. 11). Plaintiff's initial request was denied on September 5, 2012 and she filed a written request for a hearing on October 10, 2012. (R. 113-14).

In January of 2014, Administrative Law Judge Jacqueline Haber held a hearing, at which Plaintiff was represented by her attorney, Sarah E. Connelly. (R. 27). At the hearing, Plaintiff testified, as did an impartial vocational expert ("VE") Gina K. Baldwin. *Id*. On March 24, 2014, the ALJ issued a finding that Plaintiff was not disabled within the meaning of the Act and the Appeal's Council denied Plaintiff's request for review. (R. 1-3, 11-22). Plaintiff now seeks judicial review of the decision of the ALJ.

### B. Medical Evidence

Plaintiff has an extensive and detailed medical record. For purposes of efficiency, only those records that pertain to the parties' arguments upon judicial review will be given significant discussion.

1. **General**

From December 11, 2009 until March 3, 2012, Plaintiff received treatment for her papillary thyroid cancer from the Associates in Endocrinology, P.C. Over the course of her treatment, Arthur Bucci, M.D. and Douha Safar, M.D. examined Plaintiff. During those consultations, Dr. Bucci and Dr. Safar consistently indicated that, "She reported: Not feeling tired (fatigued)... No anxiety." (R. 325, 327, 330, 332, 373, 409, 413). Also during those visits, the examining physician noted that her "mood was not depressed and was not anxious. The affect was normal. Alert, oriented to time, place, and person, and well nourished." (R. 326, 328, 331, 335, 373, 410, 414). This language appears to be a standard mental status evaluation that was done during each medical exam. On two separate occasions in late 2011 and early 2012, Dr. Bucci indicated that Plaintiff complained of irritability. (R. 325, 372). In late 2012, Plaintiff complained of fatigue. (R. 413).

Plaintiff sought treatment from Dr. Howard Goldberg, M.D., an attending physician at Washington Hospital, from September 2, 2010 until September 24, 2012. (R. 269-71). Plaintiff's initial complaint was a mass on the right side of her neck. (R. 311). Her visits with Dr. Goldberg revealed mild degenerative changes of the thoracic spine, scoliosis of the thoracic spine convex to the right, a left lung lesion, and a minor salivary gland tumor for which she underwent surgery on November 11, 2010. (R. 271, 273, 283-84).

Plaintiff began treatment with John B. Martin, M.D. as her primary care physician in early 2012. Throughout the course of her treatment with Dr. Martin, Plaintiff complained of chronic difficulty sleeping, migraines, hip, back, and leg pain, and anxiety. (R. 382).

Upon filing for disability, Plaintiff's medical record was reviewed by two State agency medical consultants: Paul Fox, M.D. and Margel Guie, D.O. (R. 83, 96). Dr. Fox opined that

Plaintiff could perform light work and carry up to twenty pounds occasionally with postural limitations. (R. 83). Dr. Guie concluded that Plaintiff could perform light work and could occasionally carry twenty pounds with environmental limitations. (R. 96-97). Plaintiff was also examined by Dr. Russell Biundo, M.D., a consultative medical examiner, who opined that Plaintiff could do light work, occasionally carry twenty pounds, and would sometimes be limited to postural activities. (R. 358-65). Dr. Biundo observed that, "She does have some anxiety. It seems to be well controlled." (R. 358).

John Carosso, Psy.D. examined Plaintiff one time on February 2, 2012 upon referral from the Pennsylvania Bureau of Disability. He opined that Plaintiff suffered from poor sleep, depression, anxiety and medical / physical problems. (R. 351-52). He observed that Plaintiff demonstrated "rather clear signs of depression, panic, and other medical issues." (R. 355). Among other marked and moderate mental limitations, Dr. Carosso concluded that Plaintiff has extreme limitations in interacting with the public and supervisors. (R. 349). Plaintiff was given the Beck Anxiety Inventory test, having scored in the "severe" range. (R. 354). Dr. Carosso also administered the Global Assessment of Functioning ("GAF") test, on which Plaintiff scored 45-55.[2] (R. 355).

Two State agency psychologists also reviewed Plaintiff's medical record: Kerry Brace, Psy.D. and Phyllis Brentzel, Psy. D. Dr. Brace opined that Plaintiff had moderate restrictions of activities in daily living, moderate difficulties maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. (R. 81). She concluded that Plaintiff's subjective statements of her pain and symptoms were partially credible. (R. 84). Dr.

---

[2] A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. (R. 20.)

4

Brace considered Dr. Biundo's medical opinion to be fairly consistent with the other medical evidence of record and gave the opinion the appropriate weight. (R. 84). She concluded, however, that Dr. Carosso's medical opinion was an "overestimate of the severity of the individual's restrictions/limitations and based only on a snapshot of the individual's functioning." (R. 87).

State agency psychologist Dr. Brentzel also concluded that Plaintiff's complaints were partially credible. (R. 96). Dr. Brentzel considered Dr. Biundo's medical opinion to be consistent with the other evidence on file and the opinion of Dr. Carosso to be an overestimate of Plaintiff's impairments. (R. 96). She concluded that Plaintiff can "perform simple, routine, repetitive work in a stable environment." (R. 98). She opined that the "limitations resulting from the impairment do not preclude the claimant from performing the basic mental demands of competitive work on a sustained basis." (R. 100).

### 2. Migraine Headaches

Plaintiff was prescribed "butalbital / aspirin / caffeine / codeine" for her migraine headaches from 2010 until 2012. (R. 383). On July 10, 2012, Dr. Martin prescribed Fiorinal to replace the butalbital / aspirin / caffeine / codeine that she was no longer taking. (R. 380). During this consultation, Plaintiff complained of a headache but refused medication to alleviate for fear of addiction. (R. 379-80). Throughout Plaintiff's treatment with Dr. Martin, he indicated in his routine assessments of Plaintiff that she suffers from "headache syndromes." *Id.* Dr. Martin also consistently noted Plaintiff's allergy to aspirin (R. 379-382).

On December 23, 2013, Dr. Martin noted that Plaintiff had "headaches of migraine character, not responding to current medication." (R. 422). At this consultation, Plaintiff's migraine medication was switched from Fiorinal to Sumatriptan Succinate, a medication to be

5

taken daily, not just at the onset of migraine symptoms. (R. 424). It is unclear at this time whether Plaintiff continues to take the Sumatriptan Succinate medication.

Dr. Goldberg also consistently mentioned Plaintiff's complaints of migraine headaches, beginning in 2010. Dr. Goldberg observed that Plaintiff had an adverse drug reaction to ASA,[3] which caused her stomach pain. (R. 288, 291, 295, 298-99, 306-07, 311-12, 397-98, 393-94). Medical records from the Associates in Endocrinology, P.C., also take note of Plaintiff's allergy to aspirin. (R. 330, 409, 413). On October 21, 2010, Dr. Goldberg prescribed Plaintiff Percocet. The medical records indicate that this prescription was to be used in preparation for surgery on her oral cavity mass, not to curb her migraine headaches.[4] (R. 298).

During Plaintiff's consultation with psychologist Dr. Carosso on February 2, 2012, she was diagnosed with migraine headaches. (R. 355). Dr. Carosso opined that Plaintiff's headaches occur up to four times per week. (R. 352). Additionally, during Plaintiff's outpatient office visit for her disability evaluation, Dr. Biundo, a consultative medical examiner, opined that Plaintiff "has migraines pretty frequently." (R. 358). Dr. Biundo also noted that Plaintiff "had an MRI of the brain which has been unremarkable." *Id.*

In Plaintiff's Function Report, she mentioned that she could not sleep because of headaches. (R. 194). Further, in her Supplemental Function Questionnaire, Plaintiff described having "headaches" that have "gotten worse since [they] began." (R. 201). Plaintiff noted that sometimes the medication relieves the pain and hot showers seem to help. (R. 202). Plaintiff also consistently noted that the migraine medication makes her drowsy. (R. 233, 234, 236, 259). On

---

[3] ASA is a common abbreviation for Acetylsalicylic Acid, also called aspirin. *McGraw-Hill Nurse's Drug Handbook,* 7th Ed.. (2013). Retrieved from http://medical-dictionary.thefreedictionary.com/ASA.

[4] The medical record indicates that, "She is here to schedule surgery." (R. 298). Additionally, the Percocet was prescribed at the same time as other pre-surgery medications, including Peridex Oral Rinse and Augmentin, a form of penicillin.

her Disability Report form,[5] when asked to "List all of the physical or medical conditions" Plaintiff's first listed impairment was "Depression, migraines, major pain." (R. 219).[6]

### III. Legal Analysis

#### A. Standard of Review

The Social Security Act ("SSA") limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798 (3d Cir. 2010). Importantly, "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." *Malloy v. Comin'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009).

#### B. Five-Step Sequential Evaluation

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not,

---

[5] Disability Form SSA-3368.
[6] On her initial SSA-3368 form, Plaintiff's first listed impairment was, "Mental and emotional disorders." (R. 185). It is unclear whether Plaintiff intended migraines to be included as a mental disorder.

7

whether he or she can perform other work. *See* 42 U.S.C. § 404.1520; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citation omitted); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways: (1) by introducing medical evidence that the claimant is disabled per se because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, *see Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell*, 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or, (2) in the event that a claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job. *Newell*, 347 F.3d at 545-46; *Jones*, 364 F.3d at 503. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Rutherford*, 399 F.3d at 551; *Newell*, 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

Where a claimant has multiple impairments which may not individually reach the level of

severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 502 (3d Cir. 2009); 42 U.S.C. § 423(d)(2)(C) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

### C. Discussion

Plaintiff contends that her migraines meet Listing 11.03 pursuant to step three of the five-step sequential process. Plaintiff further contends that the ALJ failed to consider her migraine-related limitations in both her RFC determination and the hypothetical presented to the VE. Finally, Plaintiff contends that the ALJ did not give proper weight to the medical opinion of Dr. Carosso. It is undisputed that steps one, two, and four of the five-step sequential process have been satisfied. Although Plaintiff worked sporadically as a babysitter after the alleged disability onset date of May 15, 2010, this work activity did not constitute substantial gainful activity. (R. 13). Regarding step two, Plaintiff has severe physical impairments of migraine headaches, osteoarthritis, and degenerative disc disease of the lumbar spine. (R. 13, 34). Plaintiff's severe mental impairments are panic disorder with agoraphobia, major depressive disorder and generalized anxiety disorder. *Id*. Neither party contests that Plaintiff is unable to perform her past relevant work as a housekeeper or a drycleaner/presser.

#### 1. Listed Impairment

Plaintiff's first complaint is that her impairments should have been considered under 20 C.F.R. No. 4, Subpt. P, Appendix 1 Listing 11.03, not Listing 11.00. She further contends that if

the ALJ had examined her impairments under the correct listing, she would have been found disabled. Pl.'s Br. at 3-7. Defendant contends that the ALJ did examine Plaintiff's migraine headaches under all of the listings in section 11.00, including 11.03. Def.'s Reply Br. at 1. Further, Defendant contends that Plaintiff failed to meet the standard of Listing 11.03. *Id.*

While courts generally afford significant deference to an ALJ's credibility determination, an ALJ must be particularly diligent in making such determinations regarding migraine headaches because laboratory tests cannot prove their existence. *Thomas v. Colvin,* 2015 WL 4067147, at *5 (W.D. Pa. July 2, 2015) (quoting *Parsley v. Astrue,* 2009 WL 1940365, at *3 (W.D. Pa. July 2, 2009)). Brain scans and physical examinations cannot detect migraine headaches. *See Kulbacki v. Colvin*, 2016 WL 2609984 (W.D. Pa. May 6, 2016); *Thomas*, 2015 WL 4067147 at *5; *Salberg v. Astrue*, 2012 WL 4478310, at *13 (W.D. Pa. Sept. 27, 2012); *Abbruzzese v. Astrue,* 2010 WL 5140615, at *7 (W.D. Pa. Dec. 9, 2010); *Diaz v. Barnhart,* No. 01-CV-0525, 2002 WL 32345945, at *6 (E.D. Pa. Mar. 7, 2002) (citing *Federman v. Chater*, No. 95 Civ. 2892, 1996 WL 107291, at *4 (S.D.N.Y. Mar 11, 1996) (concluding that migraine headaches "do not stem from physical or chemical abnormalities which can be detected by imaging techniques or laboratory tests"). There is no single procedure that can confirm the diagnosis of migraines. Indeed, doctors frequently diagnose migraines when the described symptoms are typical, and results of physical and neurological examinations are normal. *Salberg,* 2012 WL 4478310.

Therefore, it is not appropriate for an ALJ to reject a plaintiff's testimony regarding migraines solely based on the absence of objective evidence. *Thomas,* 2015 WL 4067147, at *5. The *Kulbacki* court laid out a number of factors that a court should consider when a plaintiff complains of migraines to determine whether or not the complaints are credible. 2016 WL

2609984. These include: [1] Whether the claimant has been diagnosed with migraines; [2] whether the claimant has received treatment and medication; [3] the length of the history of complaints and treatment relating to migraines; [4] the alleged severity and frequency; [5] the symptoms the claimant alleges the migraines cause; and [6] whether the record contains any statements from doctors questioning the alleged frequency or severity. *Id.* (citing *Thomas*, 2015 WL 4067147, at *5-7) (collecting decisions).

Here, the record provides enough objective and subjective medical evidence to meet several, if not all, of the above *Kulbacki* factors. First, Plaintiff has been diagnosed with migraines from at least two medical professionals and her migraine headaches have been noted in the medical opinions of several others. (R. 288, 291, 295, 298-299, 306-07, 311-12, 355, 358, 380, 393-94, 397-98, 422). Second, Plaintiff has received three different medications for her migraine symptoms, undergone an MRI, and complained to her primary care physician about her migraine headaches. (R. 358, 380, 383, 424). Third, the record indicates that Plaintiff began complaining of her migraine headaches in 2010, and possibly even before.[7] (R. 383). Fourth, several physicians have commented on the alleged severity and frequency of Plaintiff's migraines. Fifth, Plaintiff alleges that she becomes nauseous, has difficulty sleeping, cannot see straight, and "gets these little wiggly lines going down in [her] eyes" when her migraines occur. (R. 55, 194). Sixth, and finally, none of her treating physicians questioned the frequency or severity of her migraines.

The ALJ in this case did not make a detailed finding regarding Plaintiff's migraines. Instead, the ALJ stated conclusorily, "no treating or examining physician has indicated findings that would satisfy the severity requirements of any listed impairment." (R. 14). This

---

[7] Medical records from 2010 note "migraines" in Plaintiff's "Past medical history." (R. 383).

oversimplifies the complexity of plaintiff's condition. There is rarely objective medical evidence supporting a plaintiff's complaint of migraine headaches. As such, the ALJ will need to consider the other evidence provided in the record in determining whether or not Plaintiff's migraines constitute a listed impairment. In making this determination, the ALJ must provide an adequate explanation of her reasoning for this Court to conduct a meaningful judicial review. *Burnett,* 220 F.3d at 119-20.

Additionally, the Third Circuit has not decided the correct Listing for migraine headaches. Plaintiff is correct that a considerable number of District Courts and other authorities have classified migraine headaches under Listing 11.03. *See e.g., Kulbacki*, 2016 WL 2609984; *Thomas,* 69 F. Supp. 3d at 1178; *Savage v. Colvin*, 41 F. Supp. 3d 763, 771 (S.D. Iowa 2014); *Kwitschau v. Colvin*, 2013 WL 6049072, at *3 (N.D. Ill. Nov. 14, 2013); *Theis v. Astrue*, No. 3:10CV00193 JLH, 2011 WL 2601581, at *6 (E.D. Ark. July 1, 2011); Social Security Administration National Q&A 09-036; 3 Soc. Sec. Disab. Claims Prac. & Proc. § 28:11 (2nd ed.). Given this weight of authority, it is advisable for the ALJ to specifically address whether Plaintiff's migraines caused impairments similar to those described in Listing 11.03.

Listing 11.03 requires a two-pronged inquiry. First, the plaintiff must prove either alteration of awareness or loss of consciousness. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 11.03. Second, the plaintiff must prove either transient postictal manifestations of unconventional behavior or significant interference with activity during the day. *Id.* The ALJ did not apply the medical evidence to this two-pronged test. The entirety of the ALJ's migraine Listing analysis is as follows:

> Although there is no specific Listing for migraine headaches, the undersigned considered the listed impairments under the parameters of section 11.00, which addresses neurological disorders. However, no treating or examining physician has indicated findings that would satisfy the severity requirements of any listed

12

impairment. There is no evidence of loss of motor strength, sensory or reflex changes, disturbance of gait or station or disturbance of the ability to perform fine and dexterous movements (*see,* Exhibits 4F, 6F, 8F, 12F, and 13F).

(R. 14).

The Third Circuit has held that while an ALJ must provide an explanation of her reasoning at step three, he or she need not use "particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505. Instead, the ALJ's decision, read as a whole, must illustrate that the ALJ considered the appropriate facts in concluding that Plaintiff did not meet the requirements for the listing. *Scuderi v. Comm'r of Soc. Sec.*, 302 F. App'x 88, 90 (3d Cir. 2008). An ALJ must provide an adequate explanation of his or her reasoning at step three in order for this Court to conduct a meaningful judicial review. *Burnett,* 220 F.3d at 119-20. This Court is unable to judicially review whether or not Plaintiff's migraines met Listing 11.03 from the ALJ's analysis. Accordingly, the case must be remanded.

## 2. Step-Five Analysis

The ALJ's RFC determination and the hypothetical posed to the VE failed to mention Plaintiff's migraine-related symptoms or explain whether or not they had been incorporated. (R. 16, 72). At step two of the five-step sequential process, the ALJ found Plaintiff's migraines to be "severe." (R. 13). If the ALJ finds an impairment to be severe, they should include limitations that reflect the severity of the impairment in Plaintiff's RFC and the hypothetical presented to the VE. *See Lewis v. Comm'r of Soc. Sec. Admin.,* 293 F. App'x 495 (9th Cir. 2008); *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005). The ALJ may exclude limitations from the RFC that she finds to be less than credible. *See Salles v. Comm'r of Soc. Sec.,* 229 F. App'x 140, 147 (3d Cir. 2007); *Burnett,* 220 F.3d at 121; *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999). Although the ALJ can make credibility determinations as to the evidence she chooses to reject,

she needs to explain the reasons for discounting the evidence. *See Burnett,* 220 F.3d at 112; *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999); *Cotter v. Harris,* 642 F.2d 700 (3d Cir. 1981). Without an explanation, it is difficult to tell if the evidence was not credited or simply ignored. *Cotter,* 642 F.2d at 705. Further, the ALJ must give "specific, factually-supported reasons" for concluding that a Plaintiff's testimony is less than fully credible. *Salles,* 229 F. App'x at 140.

Plaintiff was found to have the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except that she:

> "Can occasionally climb ladders, ropes or scaffolds, kneel and crawl; can frequently climb ramps or stairs, balance, stoop and crouch; and must avoid exposure to hazards such as dangerous moving machinery and unprotected heights. Additionally, the claimant can perform work that is limited to simple, routine and repetitive tasks consisting of a low stress job, defined as having only occasional decision making requirements and occasional changes in the work setting with no strict production quotas. The claimant is capable of occasional interaction with the general public and occasional interaction with supervisors and coworkers."

(R. 16).

Importantly, the ALJ did not discuss whether Plaintiff's possible absences from work due to migraine headaches would make her disabled. At the hearing, the VE expressed that an individual with Plaintiff's RFC would "need to be off task less than 20 percent of the time to maintain employment." (R. 74). The VE also noted that, "if an individual were to miss two or more days of work per month, they could not maintain unskilled employment." *Id.* Plaintiff testified that she becomes nauseous and has trouble seeing when her migraines occur. (R. 16). Her migraines reportedly occur several times a week lasting for several hours each time. *Id.* The ALJ did not address the possible attendance issues Plaintiff may face due to her migraine symptoms.

Although when Plaintiff is not experiencing a migraine she can perform normal tasks, her migraines are episodic in nature and may "affect her ability to work on a regular, sustained basis." *Abbruzzese,* 2010 WL 5140615, at *8. Other courts have held that a plaintiff's ability "to perform some limited household duties and hobbies when not experiencing migraines is not evidence that she is able to work full time 'day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'" *Thomas*, 2015 WL 4067147, at *5-7 (citing *Carlson v. Astrue*, 2010 WL 5113808, at *14 (D. Minn. Nov. 8, 2010), *report and recommendation adopted*, 2010 WL 5100785 (D. Minn. Dec. 9, 2010) (quoting *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982)). Therefore, the ALJ's discussion of Plaintiff's daily activities does not account for the failure to address Plaintiff's subjective complaints of migraine headaches in both the RFC determination and the hypothetical presented to the VE.

The ALJ noted that Plaintiff did not take her migraine medication as prescribed, which added to the ALJ's credibility finding that the migraines were not as debilitating as Plaintiff suggested. (R. 17). This Court recognizes that Plaintiff's complaint that the migraine medication causes drowsiness is an illegitimate and insufficient reason to find disability. *See Burns v. Barnhart*, 312 F.3d 113, 131 (3d Cir. 2002) ("Drowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations."). It is therefore within the ALJ's province to determine the evidentiary weight that Plaintiff's complaints of drowsiness should be given. However, Plaintiff's medical records indicate that she has an on-going allergy to aspirin, one of the main components of butalbital / aspirin / caffeine / codeine. (R. 379-80, 425-26, 431-32). This aspirin allergy reportedly caused her stomach pain. (R. 288, 295, 298). Additionally, the record indicates that Plaintiff tried two other migraine medications after her doctor reported that she no longer

15

regularly used the aspirin. (R. 380, 424). A more adequate discussion was necessary because the ALJ cited Plaintiff's failure to take her aspirin medication as the main reason for discrediting her subjective complaints of pain.

In sum, remand is necessary. *See Stewart v. Sec. of Health, Educ. and Welfare of U.S.*, 714 F.2d 287 (3d Cir. 1983) ("In view of the ALJ's complete failure to explain whether Stewart's testimony concerning the effects of his medication was not credited or simply ignored, and his failure to offer any justification for his action, we will remand the case."). On remand, the ALJ shall directly address the importance of migraines at steps three and five of the five-step sequential process, as explained above.

### 3. Treating Physician Rule

Finally, Plaintiff argues that the medical opinion of Dr. John Carosso, Psy.D. should have been afforded greater weight by the ALJ. Plaintiff contends that if Dr. Carosso's opinion were given proper weight, she would be found disabled pursuant to the SSA due to her anxiety.

Normally, a treating physician's opinion on the nature and severity of an impairment will be given controlling weight. *See Salles,* 229 F. App'x 140. However, this should only be done if the physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is *not inconsistent with other substantial evidence in the record*. *Fargnoli,* 247 F.3d at 43 (emphasis added). If the treating physician's opinion conflicts with other medical evidence of the record, then the ALJ can reject it or give it less than controlling weight. *Jones v. Sullivan*, 954 F.2d 125 (3d Cir. 1991). The ALJ has a duty to explain the evidence that she chooses to reject or which she affords lesser weight. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009). The ALJ's explanation must be adequate enough to permit the court to conduct a meaningful judicial review. *Burnett*, 220 F.3d at 119-20.

In this case, Dr. Carosso was a one-time consultative physician who examined Plaintiff. There is no evidence that the two had a long-time doctor-patient relationship, which would reflect a greater need to consider all of his medical findings. Instead, he provided medical evidence that was inconsistent with five other physicians, two of whom were psychological consultants, who also examined Plaintiff on a one-time basis before these proceedings began. Dr. Carosso's medical opinion is contradicted by a great deal of other medical evidence in the record.

Dr. Bucci treated Plaintiff for her papillary thyroid cancer for nearly six years. In all but one of her visits to his office, she reported "no anxiety." (R. 332, 330, 327, 373, 413, 409). Dr. Bucci also concluded in every single one of these visits that "The mood was not depressed and was not anxious. The affect was normal." (*E.g.,* R. 328, 331, 410). Further, Plaintiff's primary care physician, Dr. John B. Martin Jr., M.D., did not begin seeing Plaintiff for complaints of anxiety until 2012, nearly two years after Plaintiff's alleged disability began. (R. 382).

Plaintiff's contention that the ALJ did not provide "good/specific/supported" reasons for discounting Dr. Carosso's medical opinion is misplaced. Pl.'s Br. at 14. The ALJ thoroughly explained her use of Dr. Carosso's medical opinion and the reasons why she gave his opinion less weight than the others. (R. 19). Additionally, Dr. Brace wrote an entire paragraph giving an "additional explanation" of why she discredited Dr. Carosso's medical opinion. (R. 86). These reasons were reiterated again by Dr. Phyllis Brentzel. (R. 96). It was within the ALJ's province to make a credibility and weight determination from all of the medical evidence on record. She adequately explained and addressed the reasons for her decision and supported her determination with substantial evidence. Therefore, this Court will give her determination deference.

**IV. Conclusion**

For these reasons, the Court will **GRANT** PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 9) and **DENY** DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 12) and **REMAND** to the Administrative Law Judge for further proceedings in accordance with this opinion. An appropriate Order follows.

                    McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BONNIE LEE MEANS,** <br>         **Plaintiff,** <br><br> v. <br><br> **CAROLYN W. COLVIN**, <br> ACTING COMMISSIONER OF <br> SOCIAL SECURITY, <br>         **Defendant.** | 2:15-cv-01107-TFM |

## ORDER

**AND NOW**, this 20th day of June, 2016, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED,** and **DECREED** that the MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF (ECF No. 9) is **GRANTED** and MOTION FOR SUMMARY JUDGMENT OF DEFENDANT (ECF No. 12) is **DENIED**. This matter is remanded to the ALJ for further consideration in accord with this opinion. The Clerk of Court shall docket the case closed.

BY THE COURT:

s/ Terrence F. McVerry
United States District Judge

cc:     Lindsay F. Osterhout, Esq.
           Email: Lindsay@mydisabilityattorney.com

           Colin Callahan, Esq.
           Email: colin.callahan@usdoj.gov